JOHN F. BRODERICK v. CITY OF ST. PAUL and Others.[1]

November 13, 1903.

Nos. 13,607—(46).

**Municipal Corporation—Acceptance of Bid.**

    According to provisions of the charter of the city of St. Paul, the acceptance of a bid for the lighting of city streets pursuant to notice, and according to plans and specifications, is a proceeding authorized to be taken by resolution, ordinance, or by-law, only.

    *Held*, the action of the common council in accepting such a bid, and in awarding a contract, by motion, was illegal and void.

**Evidence.**

    Certain findings of fact by the trial court are sustained by the evidence.

Appeal by defendants from a judgment of the district court for Ramsey county, entered pursuant to the findings and order of O. B. Lewis, J. Reversed.

*Daniel W. Lawler* and *Ambrose Tighe,* for appellant.

*James E. Markham* and *James C. Michael,* for respondents.

LEWIS, J.

This action was brought for the purpose of enjoining the city of St. Paul and certain of its officers, and respondent the Cleveland Vapor Light Company, from entering into and carrying into effect the terms of a certain contract for lighting a part of the city streets. From a judgment entered in favor of respondents, appeal was taken.

The principal ground upon which the injunction was sought is that the contract was not executed in pursuance of the requirements of the city charter, and the specific grounds alleged in the complaint are that, in accepting the bid of respondent the Cleveland Vapor Light Company, action was taken by the city council by motion instead of by resolution; that the contract for such lighting was not let to the lowest bidder, as provided by law; that the bid of the Western Street Lighting Company was the lowest bid presented under the specifications, in all respects complying therewith, and was unlawfully rejected by

1 Reported in 97 N. W. 118.

the common council; that in considering the different bids under said specifications the common council and its members acted in an arbitrary and unlawful manner, and did not give a fair opportunity to all bidders to be heard; and that there was a secret and unlawful agreement or conspiracy entered into between the members of the council and respondent company to award such contract to it.

The record discloses remarkable haste on behalf of the council in calling for the proposal, in considering the various bids, and in letting the contract. It would seem, as is perhaps usually the case, that it was a struggle between the agents of different lighting companies to see which could exercise the most influence with the various members of the council, and instead of giving everybody a full opportunity to be heard in open discussion upon all of the points involved, before finally awarding the contract, the matter was so rapidly rushed through as to give some ground for suspicion as to the motive of the participants. However, the trial court had ample opportunity to observe the witnesses and to weigh the testimony, and it found that the board of public works and the members of the common council acted in good faith, and in the exercise of an honest judgment and discretion. Therefore upon that branch of the case we accept the findings of the court as final. We also accept the conclusions of the court to the effect that the council were justified in rejecting the bid of the Western Street Lighting Company, although the lowest bidder. This leaves for consideration the question whether, in accepting the bid of respondent and in awarding to it the contract, the common council proceeded as required by the city charter.

Under chapter 4 are enumerated the general powers of the common council. In section 7 it is provided that every order, resolution, or ordinance which shall pass the board of aldermen and the assembly shall, before it becomes operative, be presented to the mayor of the city for his approval or rejection. If he approves, such resolution goes into effect, but, if returned without approval, the common council shall proceed to reconsider the same, and if, after such discussion, two-thirds of all the members of both bodies shall agree to pass it, it shall become operative notwithstanding the mayor's veto: provided that, if the mayor retains the resolution without returning it for the period of five days, it shall become operative, and provided that, in

all cases where the original action of the common council requires a two-thirds or greater vote, the veto of the mayor shall be effectual, unless overruled by a four-fifths vote of all the members of the council. By section 6 it is provided that no appropriation of money, or resolution, order, or ordinance for the payment of money, or creating any pecuniary liability, shall be valid or operative unless it shall have passed each of the two bodies of the council by a vote of two-thirds of all the members of a full body, taken by ayes and noes, and entered upon the record of the proceedings. By section 8, that every order, resolution, or ordinance shall be published in the official paper before the same shall be in force, and shall be recorded by the city clerk in books provided for that purpose. Under the provisions of section 9, the entire city government is placed in the hands of the common council, who are authorized to proceed by the enactment of proper ordinances, rules, and by-laws for such purposes. By section 10, the common council shall have authority, by ordinance, resolution, or by-law, among other things (division fiftieth),

> "To provide for lighting the city and all public buildings, to establish, erect and maintain, and cause to be operated gas works, electric lighting plants, or other works for lighting the city streets, public grounds and public buildings."

From these provisions it appears beyond question that in providing for the lighting of the city the common council are limited in their action to procedure by ordinance, resolution, or by-law. The language is clear and explicit. The scheme of government is framed upon the theory that all important matters are delegated to the representatives of the municipality, consisting of the board of aldermen, the assembly, and the mayor. It contemplates a free and open discussion and consideration of each subject of enactment by each body of the common council and the mayor; and the object is not only to secure free deliberation and independence by such bodies and the mayor, but also to provide notice to the public of their various proceedings. The scheme is drawn for the very purpose of avoiding that secrecy and speed which is possible by motion, and without submission to the mayor, and without the publication and notice necessary in re-

spect to a resolution.  Such being the evident purpose of the charter provisions referred to, they must control the action of the common council in respect to the subject under consideration, unless it is otherwise provided.

Chapter 15 contains specific direction regarding the letting of contracts, and section 1 reads:

> "All contracts for work to be done for the city of St. Paul, or for the purchase of property of any kind, for the public use of said city, except as otherwise provided for in this charter, in which the value of such work or the price or value of such property shall exceed the sum of two hundred (200) dollars, shall be let to the lowest responsible bidder, reserving to the council the right to reject all bids.  In such case the common council shall require a notice of not less than six days for the time and place of letting such contract, by publication in the official paper of said city, which notice shall substantially describe the work to be done and such other particulars as the common council may order, and shall designate the time and place when and where sealed proposals shall be received therefor; the said proposals shall be opened and considered at the first meeting thereafter of either body of the common council, and upon any bid aforesaid being accepted, a contract in accordance therewith shall be drafted and submitted to said council for its approval; and upon the same being approved and signed by the presiding officer of each body of the said council, it shall be executed on the part of the city by the mayor and city clerk with the corporate seal of the city attached, and countersigned by the comptroller, and filed with the bond required by this charter in the office of such comptroller."

This section must be considered and construed in connection with all other provisions in the charter bearing upon the powers of the common council and city officers.

Section 1, c. 15, treated by itself, does not designate how the several steps leading up to the consummation of a contract shall be taken— whether by motion or by resolution.  We must look elsewhere, therefore, than in this section, for the specific expressions of authority and

method of procedure. We look in vain for any express authority to proceed by motion with reference to the lighting of the city. On the other hand, as above pointed out in respect to such subject, the council shall proceed by resolution. · Another inference shows that there was an intention to control the procedure with reference to lighting the city, by resolution: Section 71, tit. 3, c. 6, provides that twice a year the board of public works shall make report to the common council of the condition of the gas and electric lamps for which the city is paying, and that, such report being received, the council shall, by resolution or ordinance, direct what lights shall be used in the future. This section is drawn in harmony with the provisions conferring express authority upon the council in chapter 4. If the framers of the charter, and the people in adopting it, considered the matter of the continuance of various lights in the city of enough importance to be submitted by the board of public works to the common council, and require it to proceed in a deliberate manner, by resolution, for so much greater reason should the council be required to so proceed with reference to contracts of greater importance. Therefore, in omitting to specify in section 1, c. 15, that the council should proceed by resolution, it was not intended to confer upon it authority to proceed by motion. On the contrary, it is evident that such omission to specify the line of procedure was a mere accident, and of no importance. However, did the city substantially comply with the provisions of section 1, conceding that the council should have proceeded by resolution?

In the present case a resolution was passed, requesting the board of public works to furnish a set of specifications upon which advertisements might be had, inviting bids for lighting a certain portion of the city. In response thereto such board prepared plans and specifications for the furnishing of twenty-three hundred incandescent gasoline lamps to be maintained for the year 1903, and the common council approved of the specifications so reported, and also directed the city clerk to give notice in the official paper of the city of the intention to receive bids and award a contract for the furnishing and maintenance of such lights as provided by the plans and specifications. Such notice was given, and in response thereto three bids were received and reported

to the council, and at an adjourned meeting the council passed a resolution rejecting the bid of the Western Street Lighting Company, which was the lowest bidder; and, upon motion, the bid of respondent company, the next lowest, was accepted, and the contract awarded to it. The resolution rejecting the bid of the Western Street Lighting Company was not approved by the mayor, but at the expiration of five days became a law; and, in pursuance of the motion accepting the bid and awarding the contract to respondent company, the form of contract was subsequently approved by the board of aldermen and assembly, and duly signed by the presiding officers of each body, but at the commencement of this action had not yet been signed by the mayor and respondent company.

Attention is called to the fact that the common council approved the semiannual report of the board of public works, and by formal resolution directed the maintenance of the lamps therein specified, pursuant to section 71, title 3, c. 6; and it is submitted that the several resolutions referred to are the only necessary prerequisites, basic in character, defining the necessity for the lights and the determination of the city to maintain them, and in that respect was a compliance with the requirement calling for the lighting of the city by resolution. The argument fails for the reason that the several resolutions referred to deal only with those preliminary steps which lead up to the final and essential thing, the awarding of the contract. It would be remarkable if, in the scheme of government so elaborately planned to protect the public interest, the people should provide that in the preliminary matters of calling for specifications and bids the common council should be required to proceed by resolution, but, when the essential and critical act is reached—that which goes to the very essence of the subject—the safeguards should be removed, and the council be permitted to proceed and award the contract upon motion. Those duties prescribed by section 1 regarding the drafting of the contract, and its submission to the council for approval, and the signing thereof by the presiding officers of the assembly and the board of aldermen, city clerk and mayor, may be considered mere ministerial acts. While the section is not artistically drawn, it is evident that, after the bid is accepted and the contract authorized by the co-operation of the common council and mayor, all that remains to be done there-

after is formal in character, and for the purpose of insuring the execution of the contract in accordance with the terms of the award.

Assuming the contract was signed by the mayor, and that the parties have been operating under it for the current year, it does not follow that the act of attaching his signature had the effect of making it a legal instrument. The position of the mayor, under the provisions of chapter 4, as a necessary element in the consideration of those enactments which pertain to the government of the city, is quite different from his position as a mere ministerial officer in attaching his signature to the contract. If the contract in question was illegal for the reason stated, the mayor could not make it legal by his signature. If it did not meet with his approval, it must have been again submitted to the consideration of the common council, and passed by a four-fifths vote, and the time had passed for such resubmission and consideration. His refusal to attach his signature would not have the effect of resubmitting it to the council, to the same intents and purposes as though returned with his veto during the course of the proceedings.

The conclusion follows that the action of the common council in awarding the contract to respondent company was without authority and void, and for this reason the judgment of the court below must be reversed. So ordered.

BROWN, J. (dissenting).

I dissent. The city council of the city of St. Paul, by resolution duly passed and approved by the mayor, determined to provide for lighting a portion of the city. To that end, plans and specifications were prepared, and bids invited. In response thereto, two bids were presented, one of which, because of a failure on the part of the bidder to comply with the conditions imposed by the plans and specifications, could not be accepted, and was formally rejected by the council. The other bid, conceded to have been in full compliance with the conditions imposed, was, at a regular meeting of the council, on motion, accepted, and the contract awarded to the bidder. It was subsequently reduced to writing, and presented to, signed, and approved by the mayor. It is held by the majority that the contract was illegal and void because the bid was not accepted and the contract awarded by formal resolu-

tion, instead of by motion, which would have gone to the mayor for his approval or disapproval. The court, however, sustains the findings of the trial court, to the effect that the city council proceeded and acted honestly and in good faith, and that there was no fraud or collusion.

It occurs to me that the court is adopting an unnecessarily strict rule of law. If the contract had been awarded by formal resolution, the mayor, it is true, would have had the right to approve or disapprove it; but, as that officer is required to sign in his official character all contracts made in behalf of the city, the right of approval or disapproval still remained to him, and could have been exercised by his refusal to attach his official signature thereto when presented to him. He in fact exercised his right in this case, for he signed and executed the contract, thus approving the action of the city council. That he signed and executed it was conceded on the argument, and appellant's brief so states. If there was anything improper about the contract— if it were illegal, as held by the court—the mayor could not have been compelled to sign it by mandamus proceedings or otherwise. His act in doing so was voluntary and with full knowledge of the facts, and amounted, in contemplation of law, to an approval of the action of the council in awarding the contract, and every purpose intended to be subserved by an acceptance of the bid by resolution was accomplished. While it is true that formalities prescribed by statute for the execution of contracts by public officials must, as a general rule, be observed and conformed to, a mere irregularity of the significance of that here involved, where no fraud, collusion, or corruption is charged, should not stamp the contract as wholly illegal, in violation of law, and void.